UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| J.P. MORGAN SECURITIES LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-04163-TWP-MPB |
| ) | |
| ERIK W. WEISS, ) | |
| ) | |
| Defendant. ) | |

### ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on a Motion for Temporary Restraining Order (Filing No. 3) filed by Plaintiff J.P. Morgan Securities LLC ("JPMorgan"). JPMorgan initiated this lawsuit against former employee, Defendant Erik W. Weiss ("Weiss") for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, and unfair competition, among other things. JPMorgan asks the Court to issue a temporary restraining order to protect its trade secrets, goodwill, and customer relationships until such time as a duly appointed panel of arbitrators at the Financial Industry Regulatory Authority ("FINRA") renders an award in the underlying dispute. The parties submitted evidence and briefing, and the Court held a hearing on JPMorgan's motion on Friday, November 8, 2019. For the following reason, JPMorgan's Motion for Temporary Restraining Order is **granted**.

### I. BACKGROUND

Plaintiff JPMorgan provides traditional banking, investment, and trust and estates services in the Indianapolis, Indiana area through its Chase Wealth Management branch offices. Defendant Weiss began employment with JPMorgan (or its predecessors) in January 2007 when he joined Chase Investment Services Corp., then a registered broker-dealer and an affiliate of JPMorgan.

Weiss entered into a Chase Investment Services Corp. Supervision, Arbitration, Confidentiality, and Non-Solicitation Agreement (the "2007 Agreement"), which contained provisions prohibiting him from soliciting the firm's clients for a one-year period after the termination of his employment. The 2007 Agreement required that Weiss maintain the confidentiality of the firm's confidential and proprietary business and client information. Effective October 1, 2012, Chase Investment merged with and into JPMorgan. JPMorgan is the surviving legal entity. ([Filing No. 5 at 5](Filing No. 5 at 5).)

In 2013, Weiss was promoted to a Private Client Advisor position and he entered into a new Chase Wealth Management Supervision, Arbitration, Confidentiality and Non-Solicitation Agreement (the "2013 Non-Solicitation Agreement") with JPMorgan. Like the 2007 Agreement, the 2013 Non-Solicitation Agreement also contained provisions prohibiting Weiss from soliciting JPMorgan clients for a one-year period after the termination of his employment and requiring him to maintain the confidentiality of JPMorgan's confidential and proprietary business and client information. *Id* at 5.

Unlike traditional brokerage firms (where clients are serviced almost exclusively by one financial advisor), JPMorgan's Chase Wealth Management adopts a team approach. *Id*. at 4. Weiss serviced approximately six hundred of JPMorgan's clients or households, representing approximately $197 million in assets under management. The substantial majority of these clients were pre-existing clients who were simply given to Weiss by JPMorgan to service. To perform his official duties at JPMorgan, Weiss had access to extensive confidential financial records and information about JPMorgan's clients, including information about each client's investment and trust and estate needs. JPMorgan Chase Bank, N.A., an affiliate of JPMorgan, referred its bank clients to Weiss in his capacity as a Private Client Advisor for Chase Wealth Management in order for him to build JPMorgan's relationship with such clients. Weiss sat at his desk at a Chase Bank

branch and was introduced to hundreds of existing bank customers to offer and provide access to investment opportunities through Chase Wealth Management.  In his role as a Private Client Advisor, Weiss was not expected to engage in cold calling or attempt to build a client base independent of referrals from JPMorgan.  The substantial majority of the clients Weiss serviced at JPMorgan were assigned or referred to him by JPMorgan.  *Id.* at 4–7.

On September 13, 2019, Weiss abruptly resigned his employment with JPMorgan and immediately commenced employment with Raymond James & Associates, Inc. ("Raymond James"), a competitor of JPMorgan.  At the time of his resignation, Weiss was a Private Client Advisor in one of JPMorgan's branch offices in Indianapolis, Indiana.  Weiss' post-employment activities were restricted by his agreements with JPMorgan and JPMorgan's Code of Conduct.  Weiss agreed in his 2007 Agreement and 2013 Non-Solicitation Agreement that, when he left employment with JPMorgan, he would be restricted from soliciting JPMorgan's clients for one year and from using, disclosing, or transmitting confidential and proprietary information related to JPMorgan and its clients.  *Id.* at 2, 5, 7, 8, 10.

JPMorgan presents evidence that Weiss misappropriated its confidential client information and is using this information to solicit JPMorgan's clients in violation of Weiss' contractual obligations to JPMorgan.  In particular, JP Morgan learned that after resigning from JPMorgan and joining Raymond James, Weiss contacted JP Morgan's clients in an effort to induce them to move their accounts to Raymond James and Weiss is engaging in aggressive solicitation of JPMorgan's clients and disparaging JPMorgan in the process. ([Filing No. 5 at 2](), 10-11.) JPMorgan produced evidence that its employees have spoken with many of the clients that Weiss was assigned to service during his employment with JPMorgan, and several of those clients have informed JPMorgan that Weiss has contacted and solicited them since his departure from

3

JPMorgan. These clients have confirmed that Weiss has contacted them not simply to announce his change in employment but to actively solicit their business on behalf of Raymond James. ([Filing No. 5 at 10](Filing No. 5 at 10).) Weiss is also soliciting JPMorgan's clients through telephone calls and text messages to clients on their personal cellphones in an effort to induce them to do business with him at Raymond James. *Id*. at 2. JPMorgan has been informed by at least three clients that they received calls from Weiss in which Weiss asked to meet with them to discuss Raymond James or asked them to transfer their accounts to him at Raymond James. *Id.* One of these clients told JPMorgan that he felt pressured by Weiss to meet with him and transfer his account to Raymond James. *Id.* at 11.

A JPMorgan client informed the firm that after the client declined Weiss' request that they meet to discuss doing business, Weiss asked the client to call him back and report to him everything JPMorgan had to say. Another client reported having a similar experience where Weiss requested that the client call him to update him on what JPMorgan was telling the client. JPMorgan believes Weiss intended to use this information in his continued solicitation of JPMorgan's clients. *Id.* at 3.

In an effort to further his solicitation of JPMorgan's clients, Weiss is making disparaging comments about JPMorgan to its clients. A JPMorgan client informed the firm that during Weiss' solicitation call to the client, Weiss said that JPMorgan has inferior products to that of Raymond James and that JPMorgan management limits the products that can be offered to clients. JPMorgan believes that Weiss is making these false and disparaging statements in an effort to induce JPMorgan's clients to transfer their accounts and assets from JPMorgan to Raymond James. Weiss' solicitation efforts have proven to be successful as approximately forty of JPMorgan's clients formerly serviced by Weiss already have transferred their accounts to him at Raymond James, and those accounts total more than $27 million in assets. *Id.* at 3–4, 10–12.

In addition to soliciting JPMorgan's clients, Weiss took with him to Raymond James JPMorgan's confidential client information, including contact information such as cellphone numbers, which generally are not publicly available, and without which Weiss would have been unable to immediately commence calling and soliciting JPMorgan's clients upon his resignation from the firm ([Filing No. 5 at 3](), 11).

When he left JPMorgan to join Raymond James, Weiss maintains that he did not retain any JPMorgan customer information. He took multiple steps to search his personal electronic devices and personal email account to ensure that he did not have JPMorgan's documents and confidential information when he left the firm, and he did not intentionally memorize JPMorgan's information ([Filing No. 25-1 at 1](), 4). Weiss denies soliciting JPMorgan's clients and asserts that since joining Raymond James, he has not solicited JPMorgan's clients or asked them to transfer accounts, he has not asked to meet with clients to discuss transferring accounts, he has not pressured clients to meet or to transfer accounts, and he has not made disparaging statements about JPMorgan. Instead, he has used only his casual memory and publicly available sources to contact his clients to simply announce to them his new employment with Raymond James and provide his new contact information. *Id.* at 2, 5.

On October 9, 2019, JPMorgan initiated this litigation against Weiss seeking a temporary restraining order. JPMorgan has asserted claims for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of duty of loyalty, intentional interference with actual and prospective economic advantages, negligent interference with actual and prospective economic advantages, conversion, and unfair competition ([Filing No. 1]()).

JPMorgan is a member firm of the Financial Industry Regulatory Authority ("FINRA"), and is in the process of commencing before the FINRA Dispute Resolution an arbitration

proceeding seeking permanent injunctive relief against Weiss. Pending final determination in arbitration, JPMorgan is entitled to seek preliminary injunctive relief from this Court even though the merits of the dispute between the parties ultimately will be resolved in arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes requires a party seeking interim injunctive relief to obtain such relief from a court of competent jurisdiction (Filing No. 5 at 4; Filing No. 4 at 1; Filing No. 6-1).

JPMorgan already has filed an arbitration action with FINRA against Weiss based on the same allegations in their Complaint, and JPMorgan is seeking monetary damages on the client accounts that have been transferred from JPMorgan to Raymond James. Pursuant to FINRA Rule 13804, a FINRA member firm such as JPMorgan can seek in court *temporary* injunctive relief against FINRA Associated Persons such as Weiss. If *temporary* injunctive relief is granted by a court, then within fifteen days, a hearing will be held before a FINRA Arbitration Panel that will determine if *permanent* injunctive relief should be granted. If temporary injunctive relief is denied, there will be no permanent injunction hearing. In either event, the parties will proceed in the pending FINRA action on JPMorgan's request for monetary damages and on the counterclaims that Weiss may file (Filing No. 24 at 8; Filing No. 6-1).

JPMorgan seeks a temporary restraining order prohibiting Weiss and anyone working in concert with him from:

> (a) soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan client serviced by Defendant at JPMorgan or whose names became known to Defendant by virtue of his employment with JPMorgan (or any of its predecessors in interest); and

> (b) using, disclosing or transmitting for any purpose JPMorgan's documents, materials and/or confidential and proprietary information pertaining to JPMorgan, JPMorgan's employees, and/or JPMorgan's clients.

(Filing No. 1 at 24.)

JPMorgan also asks the Court to:

> Order[] Defendant, and all those acting in concert with him, to return to JPMorgan or its counsel all records, documents and/or information in whatever form (whether original, copied, computerized, electronically stored or handwritten) pertaining to JPMorgan's clients, employees and business, within 24 hours of notice to Defendant or his counsel of the terms of such an order.

*Id.* at 25.

## II. **LEGAL STANDARD**

The standards that apply to preliminary injunction orders also apply to temporary restraining orders. *Loveless v. Chi. Bd. of Election Comm'rs*, 2004 U.S. Dist. LEXIS 18832, at *6 (N.D. Ill. Sep. 8, 2004). Federal Rule of Civil Procedure 65(b) provides that a temporary restraining order may be issued without notice to the adverse party only if "specific facts in an affidavit or a verified complaint *clearly show* that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." (Emphasis added.) However, in this case, Weiss has been put on notice regarding JPMorgan's Motion and has had an opportunity to respond in writing and provide briefing on the legal issues that are before the Court.

To obtain a temporary restraining order, the moving party has the burden of showing that "it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that issuing an injunction is in the public interest." *Grace Schs. v. Burwell*, 801 F.3d 788, 795 (7th Cir. 2015). The greater the likelihood of success, the less harm the moving party needs to show to obtain an injunction, and vice versa. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). A temporary restraining order "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the

burden of persuasion.'" *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) (granting preliminary injunctive relief is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it").

### III. DISCUSSION

As a preliminary matter, Weiss has argued that JPMorgan has presented only hearsay evidence, and thus, there is no admissible evidence before the Court that supports JPMorgan's position or supports the issuance of a temporary restraining order. However, "hearsay can be considered in entering a preliminary injunction." *SEC v. Cherif*, 933 F.2d 403, 412 n.8 (7th Cir. 1991). *See also Dexia Credit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010) ("a district court may grant a preliminary injunction based on less formal procedures and on less extensive evidence than a trial on the merits"); *Bedrock Mgmt. v. Peoples Choice Entm't, Inc.*, 2014 U.S. Dist. LEXIS 142023, at *11 n.3 (N.D. Ill. Oct. 6, 2014) ("It is well-established that hearsay may be considered in connection with a motion for entry of a preliminary injunction."). Indeed, the United States Supreme Court has explained,

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). In light of this case law, the Court concludes that Weiss' argument concerning the inadmissibility of JPMorgan's evidence is unavailing.

8

Although JPMorgan has asserted numerous claims in its Complaint, the parties' arguments and the nature of the requested temporary restraining order focus on the breach of contract claim. Therefore, the Court will focus its analysis and discussion on the breach of contract claim.

A.      **Likelihood of Success on the Merits**

The parties are essentially in agreement that the employment contracts Weiss signed expressly provide that he would not solicit JPMorgan's clients for a period of twelve months after Weiss left his employment with JPMorgan. JP Morgan asserts that Weiss immediately breached his obligations after leaving JPMorgan and joining Raymond James. JPMorgan does not seek to bar Weiss from working for a competitor or in his chosen profession. Instead, JPMorgan asserts it is taking the necessary steps to protect its business from the poaching of clients and the misuse of confidential information to solicit clients in conformity with Weiss' contractual obligations.

Weiss' 2013 Non-Solicitation Agreement with JPMorgan states,

> [Y]ou understand and agree for a period of twelve (12) months after your employment with JPMC terminates for any reason that you may not on your own behalf or that of any other persons or entities, directly or indirectly solicit or attempt to solicit, induce to leave or divert or attempt to induce to leave, initiate contact with or divert from doing business with JPMC, any then current customers, clients, or other persons or entities that were serviced by you or whose names became known to you by virtue of your employment with JPMC, or otherwise interfere with the relationship between JPMC and such customers, clients, or other persons or entities.

([Filing No. 5-2 at 4](#)) (emphasis omitted).

JPMorgan argues that it is likely to succeed on the merits of its claim because courts across the country, including the Southern District of Indiana, have issued preliminary injunctive relief in cases involving restrictive covenants for brokerage firms. Preliminary injunctive relief was granted in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goodson*, 820 F. Supp. 1128, 1130 (S.D. Ind. 1993), where the brokerage firm's restrictive covenant prohibited the departing broker from

9

soliciting for one year after the termination of his employment any client he had served or whose name became known to him during his employment. The restrictive covenant also required the return of any original records and the purging or destruction of any computerized, duplicated, or copied records removed from the firm. The court granted injunctive relief to protect the firm's interests. JPMorgan points to twenty-one other cases where JPMorgan has been granted preliminary injunctive relief to enforce the exact same or substantially similar contracts to the contracts at issue in this case and under similar circumstances ([Filing No. 4-1](Filing No. 4-1)).

JPMorgan asserts that Weiss' restrictive covenants are enforceable and explicitly provide for injunctive relief. Under New York law (which is the designated choice of law that the parties agreed to in the employment contracts), the restrictive covenants are enforceable and support injunctive relief. A restrictive covenant prohibiting the solicitation of clients by a former employee is enforceable to the extent that it is reasonable and protects a legitimate business interest of the former employer. New York's highest state court explained that a restraint is reasonable if it "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999) (emphasis in original).

"[T]he legitimate purpose of an employer in connection with employee restraints is to prevent competitive use, for a time, of *information* or *relationships* which pertain peculiarly to the employer and which the *employee acquired* in the course of the employment." *Id.* at 1224 (internal quotation marks and citation omitted) (emphasis in original).

> [A] court will prevent the solicitation by a former employee of customers who are not openly engaged in business in advertised locations or whose availability as patrons cannot readily be ascertained but whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money, constituting a part of the good-will of a business which enterprise and foresight have built up.

*Kelly v. Evolution Mkts., Inc.*, 626 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

JPMorgan asserts that it has a legitimate business interest in its client lists and information as JPMorgan has expended significant resources and time to building up its goodwill, client relationships, and client lists, and these relationships and personal and financial information are not publicly available. JPMorgan argues the non-solicitation agreement is reasonable and no greater than is required for the protection of its legitimate business interest. The restrictive covenant protects for a reasonable time (twelve months) the client information and relationships that Weiss obtained only through his employment with JPMorgan. Accordingly, Weiss likelihood of success n the merit of this claim appears quite strong.

Weiss resists this conclusion on multiple bases. He argues that there has been no breach of contract because he has not solicited JPMorgan's clients; rather, he has merely announced and notified to clients his change in employment, as required by his fiduciary duty. Weiss argues, he did what he was permitted to do and what he was required to do. He argues, and JP Morgan does not dispute, that courts throughout the country have allowed announcements or informational contacts because they do not constitute a solicitation. Weiss provided affidavits from a handful of his clients who stated that Weiss did not solicit them to transfer their accounts to Raymond James, and they would transfer their accounts wherever Weiss works because they have a good, trusting relationship with him.

Weiss further asserts that the JPMorgan non-solicitation covenant is unenforceable because it is unreasonable and overly broad by including JPMorgan's parent company and the parent company's approximately 500 subsidiaries as well as defining "solicitation" too broadly by

including "announcements" and "advertisements." It also broadly includes JPMorgan clients with whom Weiss never acquired a relationship through his employment.

Weiss argues that controlling New York law is clear that an employer's enforceable "legitimate interest" is limited to the former employee's "use of client relationships which [the employer] enabled him to acquire through his performance of . . . services for the firm's clientele during the course of his employment." *BDO Seidman*, 712 N.E.2d at 1225. It does not extend to "clients with whom a relationship with [the former employee] did not develop through assignments to perform direct, substantive . . . services." *Id.*

Weiss also argues that JPMorgan does not have a legitimate business interest in its client lists because JPMorgan is a signatory of the Protocol for Broker Recruiting ("Protocol"), and as a signatory, JPMorgan agreed that when advisors leave, they can take customer names, addresses, telephone numbers, email addresses, and account types and solicit the accounts. Weiss argues that JPMorgan cannot claim that the names, addresses, telephone numbers, and email addresses of clients are confidential for some retail clients but not for others. Weiss additionally argues the restrictive covenant is unenforceable because it violates FINRA policy directing that clients should be able to transfer their accounts without interference from member firms.

Finally, Weiss asserts that JPMorgan is seeking enforcement of a narrowed and wholly rewritten covenant that hardly resembles the actual covenant in the 2013 Non-Solicitation Agreement. If a former employer is seeking "partial enforcement" of an overbroad restrictive covenant through blue-penciling, then it has an extra burden of proof, and Weiss asserts JPMorgan has failed to meet the burden. To be entitled to partial enforcement, the employer must demonstrate "an absence of overreaching, coercive use of dominant bargaining power, or other anticompetitive misconduct" and that it "has in good faith sought to protect a legitimate business

interest, consistent with reasonable standards of fair dealing." *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 362 (N.Y. 2015). Weiss asserts that when a court blue-pencils an offensive clause, the court may not add new terms; rather, it may only strike the offending language. JPMorgan's request for a temporary restraining order that is narrower than the language of the 2013 Non-Solicitation Agreement is a concession by JPMorgan that the restrictive covenant is overly broad and unenforceable.

After reviewing the parties' arguments, the evidence before the Court, and the case law, the Court is persuaded that JPMorgan has a reasonable likelihood of success on the merits of its breach of contract claim. There is no dispute that the contract between the parties exists. The contract clearly provides for the non-solicitation of customers/clients for a period of twelve months following Weiss' departure from JPMorgan. While Weiss argues that the provision is overly broad, he ignores that the provision is appropriately limited by the language that the prohibited solicitation applies to clients who were serviced by Weiss or whose names became known to him through his employment. While the contract includes JPMorgan Chase Bank, N.A. and its affiliates in the definition of "JPMC" and uses the acronym "JPMC" within the non-solicitation provision, the provision is limited by Weiss' actual employment with JPMorgan. There is no need for the Court to blue-pencil, modify or rewrite the contract in order to enforce the restrictive covenant. JPMorgan's requested preliminary injunctive relief fits within the bounds of the restrictive covenant. Furthermore, JPMorgan's assertion is well-taken that its decision not to pursue a broader restraining order was a litigation cost-benefit decision, not a concession that the provision is overly broad.

The Court also concludes that the restrictive covenant and the requested restraining order do not prohibit Weiss from making a permissible announcement that he has changed employers.

Likewise, contrary to Weiss' assertion regarding FINRA policy, the restrictive covenant does not interfere with any client's ability to transfer their accounts to the broker or brokerage firm of their choosing. Rather, the provision restricts a broker's ability to solicit particular clients for a defined period of time. Furthermore, Weiss' argument that JPMorgan is not entitled to protection based on it being a signatory to the Protocol is unavailing. JPMorgan joined the Protocol in a limited capacity, expressly limiting its applicability to certain divisions or lines of business, none of which apply to the circumstances of this case. Weiss expressly acknowledged in his Declaration that the division he worked in at JPMorgan is not part of the Protocol (Filing No. 25-1 at 3–4).

As recognized by many other courts (*see* Filing No. 4-1), JPMorgan has a legitimate business interest in its client relationships, lists, and information. JPMorgan has expended significant resources and time to build its goodwill, client relationships, and client lists. The knowledge of JPMorgan's particular clients and their particular financial needs and the financial services available to address those needs is not publicly available. The restrictive covenant to which Weiss agreed is reasonably tried to and no greater than is required for the protection of JPMorgan's legitimate business interest. As Weiss has acknowledged, an employer's enforceable legitimate interest applies to the former employee's "use of client relationships which [the employer] enabled him to acquire through his performance of . . . services for the firm's clientele during the course of his employment." *BDO Seidman*, 712 N.E.2d at 1225. Such is the case here. The restrictive covenant protects the client information and relationships that Weiss obtained only through his employment with JPMorgan.

Weiss' client affidavits provide evidence that some clients were not solicited by Weiss to leave JPMorgan. However, those client affidavits do not negate the evidence provided by JPMorgan that other clients were solicited in violation of Weiss' employment contract. JPMorgan

presented evidence that Weiss solicited its clients and successfully transferred approximately forty of JPMorgan's clients to Raymond James, and those accounts total more than $27 million in assets. Weiss' client affidavits account for only a small portion of the approximately forty transferred clients. Weiss argued that JPMorgan should have presented affidavits from clients who complained that Weiss had pressured them or solicited them, and JPMorgan responded that clients' confidentiality and the sensitivity of the financial relationship warranted not providing affidavits from such clients. JPMorgan's response is well-taken. At this stage of the litigation, JPMorgan's evidence is sufficient to support a successful breach of contract claim based on the non-solicitation provision.

B.  **Irreparable Harm and Inadequate Remedies at Law**

JPMorgan argues that it will suffer irreparable harm if an injunction is not issued. "Whenever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate." *Jak Prods., Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993); *Marriott Intl., Inc. v Eden Roc, LLLP*, 2012 N.Y. Misc. LEXIS 6246, at *11 (N.Y. Sup. Ct. Nov. 7, 2012) ("damage to business reputation and good will can be difficult or impossible to quantify and demonstrates irreparable harm as opposed to injury that can be compensated with damages"). "Because of the inability to project with any degree of certainty how long a given client would have remained with [plaintiff] if defendant had not made himself available as an alternative source of accounting services, [plaintiff's] actual lost profits from defendant's breach would be impossible to determine with any precision." *BDO Seidman*, 712 N.E.2d at 1227. JPMorgan asserts it will be irreparably harmed if Weiss is permitted to continue violating the terms of his agreement with JPMorgan by soliciting JPMorgan's clients because of the loss of goodwill and because the loss of clients, their accounts' growth, and clients'

referrals is unquantifiable. JPMorgan further asserts that another aspect of irreparable harm is that office morale and stability will be jeopardized if Weiss is permitted to violate his agreements and JPMorgan's Code of Conduct.

JPMorgan further argues that it has no adequate remedy at law because it is extremely difficult to quantify the future economic losses that JPMorgan will suffer from the loss of its clients and their accounts to a competitor. JPMorgan cannot calculate how many of its clients' accounts would have grown in the future or by how much. In addition, JPMorgan cannot quantify the loss of client confidence that will occur absent an injunction. JPMorgan argues the loss of confidence will occur because Weiss has compromised JPMorgan's clients' reasonable expectation of privacy. Irreparable harm lies, in part, in the fact that JPMorgan's clients expect their personal information, their market transactions, and their investment assets to be known only to themselves, JPMorgan, and JPMorgan's representatives.

Weiss argues that JPMorgan cannot establish the irreparable harm or inadequate remedy at law necessary for injunctive relief because any purported damages are calculable. JPMorgan has already filed an arbitration action with FINRA against Weiss based on the same allegations asserted in this action, and it is seeking monetary damages on the client accounts that have transferred from JPMorgan to Raymond James. If the FINRA panel deems it warranted, the panel can easily award monetary damages to JPMorgan. The securities industry is highly regulated, and every transaction and every customer transfer are tracked, so these activities can be quantified. Thus, JPMorgan cannot establish irreparable harm as it has an adequate remedy at law: monetary damages. Further, Weiss asserts, by being a signatory to the Protocol, JPMorgan acknowledged that it can suffer no harm by a departing employee taking client lists when they leave and soliciting clients.

The Court determines that JPMorgan has shown that it could suffer irreparable harm without an adequate remedy at law if no injunction is issued. This harm and inadequate remedy include the potential loss of goodwill, loss of client referrals, and loss of client confidence because of a former employee's actions that compromise clients' reasonable expectations of privacy. While FINRA may be able to calculate and award monetary damages based on client accounts that already have transferred from JPMorgan to Raymond James, that is only part of the harm and part of the remedy. Furthermore, as the Court discussed above, the Protocol is not applicable to JPMorgan's line of business at issue in this case; therefore, Weiss' argument concerning the Protocol and a lack of harm is unavailing.

C.    **Balance of Equities and the Public Interest**

JPMorgan argues that the balance of harms between it and Weiss easily weighs in favor of JPMorgan and the issuance of an injunction. An injunction would safeguard JPMorgan's confidential information, its goodwill, and its reputation. By contrast, Weiss has deliberately breached his commitments to JPMorgan by misappropriating JPMorgan's confidential information and by inducing JPMorgan's clients to join him at his competitor firm. Weiss would not be prohibited from earning a livelihood or working for Raymond James. An injunction simply would not allow him to breach the contract he entered into with JPMorgan. JPMorgan asserts that the public interest is served by requiring parties to honor their contracts and by keeping personal, financial information private, confidential, and protected.

Weiss argues that the mere filing of this action has damaged his reputation. Within twenty-four hours of filing, the media started covering this lawsuit. Weiss' reputation has been harmed by the published news story and will be harmed by additional coverage. He argues that he may never recover from the further reputational harm that would be caused if an injunction is actually

17

issued. Weiss asserts that JPMorgan would likely cite an injunction to clients as proof that Weiss has done something illegal when he has not. JPMorgan, on the other hand, will suffer no reputational or other appreciable harm if the injunction is denied because, with its parent company, it has a presence in over one hundred markets and over 250,000 employees. JPMorgan can absorb the loss of one employee from one branch office. Weiss further argues an injunction would harm the public interest, including Weiss' clients, many of whom he has serviced for years. These clients rely on him for guidance and investment advice. If an injunction is entered prohibiting Weiss from soliciting clients, it will quash his ability to speak freely and to answer clients' questions. He will not be able to answer fully and truthfully because he will have the possible threat of contempt of a court order if his responses are in some way considered solicitations. There is a strong public interest in open competition in the securities market, and securities customers have a right to deal with the broker of their choice.

The Court concludes that the public interest factor does not favor one party over the other. Each side has strong public interests that favor their position. The Court notes, however, that an injunction prohibiting Weiss from soliciting JPMorgan's clients in violation of the non-solicitation clause does not inhibit customers or clients from transferring accounts and working with the broker of their choice. There is no allegation that JPMorgan is interfering with customers transferring their accounts if they've asked to do so. And, in fact, 40 have, and JPMorgan has not interfered.

The balance of harms between the parties favors JPMorgan. Without an injunction, JPMorgan's confidential information and goodwill and its clients' confidence in its ability to maintain confidentiality are threatened. Any reputational harm to Weiss already has occurred by the media coverage of this lawsuit. Any such reputational harm likely is minimal as the evidence shows that Weiss has had numerous clients follow him to Raymond James. Additionally, an

injunction is not an indication that Weiss has engaged in illegal activity; rather, an injunction simply orders Weiss to honor his contractual obligations. Furthermore, an injunction will not prohibit Weiss from continuing his work for Raymond James or pursuing his livelihood.

## IV. CONCLUSION

For the reasons stated above, JPMorgan's Motion for Temporary Restraining Order (Filing No. 3) is **GRANTED**.

IT IS, THEREFORE, **ORDERED** that:

1. A Temporary Restraining Order is hereby issued immediately. JPMorgan shall post security no later than **November 20, 2019**[1]. The parties are **DIRECTED** to determine the appropriate amount of security during the conference with the Magistrate Judge as ordered below.

2. Weiss and all those acting in concert with him, including but not limited to the directors, officers, employees, and agents of his new firm, Raymond James, are temporarily enjoined and restrained, directly or indirectly, from:

> (a) soliciting, attempting to solicit, inducing to leave or attempting to induce to leave any JPMorgan client serviced by Weiss at JPMorgan or whose name became known to Weiss by virtue of his employment with JPMorgan (or any of its predecessors in interest); and
>
> (b) using, disclosing, or transmitting for any purpose JPMorgan's documents, materials, and/or confidential and proprietary information pertaining to JPMorgan, JPMorgan's employees, and/or JPMorgan's clients.

3. Weiss, and all those acting in concert with him, including but not limited to the directors, officers, employees, and agents of Raymond James, are further **ORDERED** to return to JPMorgan or its counsel all records, documents, and/or information in whatever form (whether original, copied, computerized, electronically stored, or handwritten), pertaining to JPMorgan's

---

[1] In its proposed Temporary Restraining Order (Filing No. 3-1), JPMorgan concedes that it should post a security bond in the event the requested relief is granted. The Court encourages the parties to agree on a reasonable sum.

19

clients, employees and business, within 24 hours of notice to Weiss or his counsel of the terms of this Order.

4. This Temporary Restraining Order is binding upon Weiss, his agents, servants, employer, any entity with which he is employed or affiliated, and those in active concert or participation with him who receive actual notice of this Order.

5. This Order shall remain in full force and effect for a period of **fourteen (14) days** pursuant to Federal Rule of Civil Procedure 65.

6. The parties are **DIRECTED** to proceed with arbitration in accordance with Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes.

7. The parties are **ORDERED** to promptly contact the Magistrate Judge to schedule a conference to discuss whether preliminary injunctive relief will be sought, and if such relief will be sought, to discuss a discovery and briefing schedule. If necessary, a hearing on JPMorgan's request for a preliminary injunction will be set following the parties' conference with the Magistrate Judge.

**SO ORDERED.**

Dated: 11/15/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Steven Castaldo
PADUANO & WEINTRAUB LLP
sc@pwlawyers.com

Jeffrey M. Csercsevits
FISHER & PHILLIPS LLP
jcsercsevits@fisherphillips.com

David W. Erb
FISHER & PHILLIPS, LLP
derb@fisherphillips.com

Christopher Charles Hagenow
BLACKWELL, BURKE & RAMSEY, P.C.
chagenow@bbrlawpc.com

Sally F. Zweig
KATZ KORIN CUNNINGHAM, P.C.
szweig@kkclegal.com